## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,** | |
| Plaintiff, | |
| v. | Civil Action No. 19-cv-2114 (CJN) |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | |
| Defendant. | |

### Plaintiff's Memorandum in Support of its Motion for Summary Judgment

This motion involves a narrow dispute arising from a Public Access to Records Policy (PARP) request. At issue is whether the Washington Metropolitan Area Transit Authority (WMATA) may withhold the ultimate amounts paid to settle 17 matters.

### I.    Legal Standards

WMATA regulations specify that PARP should be interpreted "consistent with the federal Freedom of Information Act [(FOIA)]." Wash. Metro. Area Transit Auth., PARP § 1.0 (2019). Courts in this District have endorsed that instruction. *ERG Transit Sys. v. Wash. Metro. Area Transit Auth.*, 593 F. Supp. 2d 249, 250 & n.2 (D.D.C. 2009); *see also Brown v. Wash. Metro. Area Transit Auth.*, No. 19-cv-2853 (BAH), 2020 WL 806197, at *4 n.4 (D.D.C. Feb. 18, 2020).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A grant of summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Unlike a normal plaintiff's summary judgment motion, in a FOIA or FOIA-like case, it is an agency's burden to prove that it has complied with its obligations under FOIA. *See U.S. DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To prevail, the agency must meet its burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation omitted)

To determine whether an agency has carried its burden, the district court may rely on agency affidavits and declarations that demonstrate the adequacy of the search for responsive records and the applicability of any claimed exemptions. *See Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

## II.    Factual History

HRDC has spent the last three decades dedicated to public education, prisoner education, advocacy, and outreach to support the rights of prisoners and to further basic human rights.[1] To

---

[1] HRDC was previously named Prison Legal News. It changed its name to differentiate the nonprofit organization from its flagship publication.

accomplish this mission, HRDC gathers information from governmental entities around the country and publishes the information in its journals and on its websites. HRDC publishes two magazines: *Prison Legal News* and *Criminal Legal News*. Through its publishing arm, HRDC also publishes books about the criminal justice system and legal issues affecting prisoners. *See* Complaint [ECF 1] ¶¶ 7-12.

WMATA operates its own police force, the Metro Transit Police Department. This Police Department has jurisdiction and arrest powers throughout the region, covering a population of 3.2 million. *See* Complaint, ¶ 11. WMATA's annual budget is roughly $4.8 billion. Justin George, "Metro makes case for money as leaders point to federal government," *The Washington Post* (Oct. 15, 2022), https://www.washingtonpost.com/transportation/2022/10/15/metro-funding-derailment-subsidies/. Federal moneys cover about $835 million in capital expenses and $2.4 billion in pandemic relief finds. *Id.* The District of Columbia, Maryland, and Northern Virginia contribute about $2.2 billion in public money annually, which covers most of the operating budget. *Id.*

In February 2019, HRDC submitted a PARP request for specific information about legal proceedings involving the Metro Transit Police Department. The request sought, for matters  in which the agency or insurers paid $1,000 or more to resolve claims "a copy of the verdict, settlement or judgment in each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award," and "a copy of the complaint (if it was a lawsuit) or the claim (if it was not)." The

request was clarified to include only those documents created since 2010. HRDC also requested a fee waiver.  Statement of Material Facts Not in Dispute (hereinafter SMF), ¶ 1.

In March 2019, WMATA denied the request for a fee waiver and refused to provide any documents, claiming the request was too burdensome. *Id*. at ¶ 2. In May 2019, WMATA denied the timely-filed administrative appeal. *Id*. at ¶ 3. This litigation followed.

### III.    Procedural History

HRDC  filed this Complaint in July 2019. [ECF 1]. WMATA moved to dismiss the case. [ECF 5]. HRDC opposed this motion. [ECF 9]. This Court held a telephonic hearing in June 2020 and offered the parties the opportunity to reconsider their positions. [Minute order of June 5, 2020]. After that hearing, WMATA began a rolling production of responsive records.

### IV.    Documents withheld

This motion concerns 17 documents withheld in their entirety. As represented in the parties' last Joint Status Report [ECF 31], HRDC did not wish to obtain the settlement agreements with the ultimate settlement amounts redacted because it does not believe that it would meaningfully move the litigation forward. Ultimately, HRDC is interested in knowing the amounts of money paid to resolve the claims and cases brought.

Because the Court may evaluate the public interest in disclosure, as described below in Section V.C., the matters to which those settlements pertain are listed here:

1. *Bell v. Lewis* , 0003786G-09 (DC Superior Court)
   Constitutional and common-law claims based on allegations that, because she was passing out flyers, an officer pushed plaintiff to the ground, tripped her when she got up, then slammed her down, jumped on top of her, and cuffed her. Settlement withheld.

2. *Bellamy v. Mann* 1:22-cv-00131-RWR (D.D.C.)
   Constitutional and common-law claims based on allegations that, because the plaintiff videotaped the arrest of someone else, a police officer threw him to the ground , punched the back of his head so his face hit the street, continued to hit him, used pepper spray, took his phone, and failed to secure his backpack. Settlement withheld.

3. *Bullock v. McKinney*, 1:12-cv-00985 (ABJ) (D.D.C.)
   Constitutional and common-law claims based on allegations that unidentified undercover MTP officers came up to the plaintiff on the street,  grabbed him, and beat him so severely he had a seizure and lost consciousness. Settlement withheld.

4. *Caceres. v. WMATA*, 13-0006588 (DC Superior Court)
   Personal injury claims based on WMATA employee's negligent operation of a vehicle. Settlement withheld.

5. *Callis v. WMATA*, 8:10-cv-01417-DKC (DMD)
   Federal and state Constitutional and common-law claims based on allegations that when arresting one of the plaintiffs, police officers punched and kicked him, even after he fell to the ground, and then sprayed him with pepper spray. Settlement withheld.

6. *Cardenas v. Tubbs et al.* 1:11-cv-01685-EGS (D.D.C.)
   Constitutional and common-law claims based on allegations that a police officer caused plaintiff's bicycle to fall down the elevator, then a group of officers pushed him down and piled on top of him. Settlement withheld.

7. Darrell Craig Claim
   WMATA could not locate the prelitigation claim presented by Mr. Craig and has withheld the resulting settlement.

8. *Halcomb v. WMATA*, 1:02-cv-1336 (PLF) (D.D.C.)
   Constitutional and common-law claims arising from allegations that a police officer arrested the plaintiff without cause, injured her hands during arrest, and stomped on her foot. The litigation reached a $250,000 jury verdict.[2] The complaint and verdict forms were provided; the settlement reached pending appeal was withheld.

---

[2] The verdict was covered in HRDC's publication *Criminal Legal News*: Christopher Zoukis, "D.C. Woman Awarded $250,000 after Assault by Metro Transit Police," *Criminal Legal News*, (May 6, 2018), https://www.criminallegalnews.org/news/2018/may/6/dc-woman-awarded-250000-after-assault-metro-transit-

9. *Harris v. Price*, 1:12-cv-00110-CKK (D.D.C.)
Constitutional and common-law claims brought for the arrest of a Street Sense vendor, who officers pulled out of his wheelchair, threw to the ground, smashing his face into the sidewalk, and then stepped on his back. Settlement withheld.

10. *Jones v. Salvas, 8:15-cv-00691-GJH (DMD)*
Federal and state Constitutional and common-law claims based on allegations that, when the plaintiff's fare card did not work a police officer grabbed her by her arm and threw her against the wall, then threw her to ground, jumped on top of her, and injured her arm. Settlement withheld.

11. *Lyles v. Remaley*, CAL 13-14513 (Prince George's County Circuit Court)
Constitutional and common-law claims arising from allegations that while plaintiff was in his car, three WMATA officers forcibly pulled him out of his car, put a gun on the back of his head, tackled him, beat him, and choked him until he was unconscious, searched his vehicle, and then released him without a citation. Settlement withheld.

12. *Miller v. Price*, 1:12-cv-00066-JEB (D.D.C.)
Constitutional and common-law claims for the arrest of a person filming the Harris arrest described above. Settlement withheld.

13. *Minor v.* Salvas, 12-0008269 (DC Superior)
Common-law claims based on allegations that police officers threw plaintiff to the ground, kicked his torso, and shoved his face and head into a railcar window. Settlement withheld.

14. *Poirier v. Sarrichio*, V353276 (Circuit Court for Montgomery County)
Constitutional and common-law claims arising from allegations that an officer pulled plaintiff over at a metro station, refused to look at her documentation, dumped all her belongings on the ground, made her expose her breasts, and impounded her car. Settlement withheld.

15. *Ronkin v. Vihn*, 1:12-cv-00729-RBW (D.D.C.)
Constitutional and common-law claims based on allegations that a police officer grabbed a 21-year-old woman by the neck, threw her to the ground, purposely exposed her, and pressed his erect penis against her bare buttocks.  Settlement withheld.

16. *Sam v. WMATA*, 8:14-cv-00945 (DMD)
Federal and state Constitutional and common-law claims based on allegations that an officer falsified an affidavit for the plaintiff's arrest. WMATA could not locate the

---

police-christopher-zoukis-gloria-halcomb-was-awarded-250000-federal-court-after-she-was-falsely-arrested-and-subjected-excessive-force-district-columbia-metro-transit-po/.

complaint in its records, but it is available on the public docket, ECF 2. Settlement withheld.

17. *Terry R. Walker v. Ronald A. Pavlik, Jr.*, 1:16-cv-00410-APM (D.D.C.) Constitutional and common-law claims based on allegations that a police officer arrested the plaintiff without cause and used a taser without cause. Settlement withheld.

*SMF* ¶¶ 4-5. All but one of the matters for which information can be gleaned involve claims by members of the public that a police officer violated his or her civil rights. For each of the settlements withheld, WMATA has stated that its withholding was based on PARP § 6.1.4 (confidential commercial information) and PARP § 6.1.5 (qualified commercial privilege).

Not included in this motion is the settlement in *Winslow v. Taylor* 1:13-cv-00659-EGS (D.D.C.). In preparing this motion, HRDC learned that the $43,000 settlement had been filed on the public docket at ECF 26-1 and is available on the website of the American Civil Liberties Union of the District of Columbia, at

https://www.acludc.org/sites/default/files/field_documents/winslow.26.consent_motion_for_settlement_approval.pdf. While HRDC does not concede that this document was properly withheld, respect for judicial efficiency leads it to not contest this issue.

Also not raised by this motion are documents related to the claim of Damian Barnes and the litigation by Terron Corbett. WMATA disclosed that there was a claim or complaint brought by Mr. Barnes, but after a diligent search, no records were found. WMATA also produced the Complaint filed by Mr. Corbett but did not locate the verdict paperwork. While it is regrettable that the papers have been lost, HRDC does not challenge the adequacy of those searches.

**V.      There is no legal basis for withholding any of the settlements at issue.**

      **A.  Exemption 6.1.4, for confidential commercial information provided to an agency, does not shield these settlements from disclosure.**

WMATA's attempt to withhold these agreements under Exemption 6.1.4 fails. PARP

Exemption 6.1.4, like FOIA Exemption 4, shields from disclosure any "privileged or

confidential" "trade secrets and commercial or financial information" obtained from a person.

*See* PARP § 6.1.4; 5 U.S.C. § 552(b)(4). That "person" must be a third party, completely

separate from WMATA. *Bd. of Trade v. Commodity Futures Trading Com.*, 627 F.2d 392, 403-04

(D.C. Cir. 1980); *see also United Techs. Corp., Pratt & Whitney Div. v. U.S. DOD*, 601 F.3d 557,

559, n.2 (D.C. Cir. 2010) (a person is defined as "an individual, partnership, corporation,

association, or public or private organization other than an agency.").


The settlement documents at issue do not fit this bill. They were not obtained from a third

party—they are documents prepared jointly by WMATA and the plaintiffs bringing the claims or

cases, memorializing agreements into which they entered. And so, they cannot be shielded from

production under Exemption 6.1.4.


      **B.  Exemption 6.1.5, the qualified commercial privilege, is not applicable to this situation.**

WMATA's attempts to withhold the documents under Exemption 6.1.5 similarly fails.

Following FOIA's structure, PARP Exemption 6.1.5, like FOIA Exemption 5, shields from

disclosure any "[i]ntra-agency and inter-agency (Metro Compact signatories and political

subdivisions and representatives) memoranda or letters which would not be made available by

law to a party in litigation with Metro." *See* PARP § 6.1.5; 5 U.S.C. § 552(b)(5) (covering "inter-

agency or intra-agency memorandums or letters"); *see also M/A-Com Info. Sys., Inc. v. U.S. Dep't of Health & Human Servs.*, 656 F. Supp. 691, 692 (D.D.C. 1986) (Exemption 5 "does not cover papers exchanged between a government agency and an outside adverse party").

Again, settlement documents are not covered. While, as described above, they are not purely external documents, neither are they purely internal. They are contracts entered into by two parties—WMATA and the plaintiff settling the matter.

Further, even if these were considered purely internal documents, they are not automatically shielded under this exemption. Withholdings under Exemption 5 are restricted to "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975). The Supreme Court has admonished that a claim of Exemptions 5's commercial privilege based on anything besides executive privilege or the attorney-client privilege must be viewed "with caution." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 355 (1979).

It is true that in *Merrill*, the Supreme Court held that Exemption 5 encompasses the "qualified privilege for confidential commercial information, at least to the extent that this information is generated by the Government itself in the process leading up to awarding a contract." *Id.* at 360. But that is as far as the exemption goes. Settlement agreements do not fall within the commercial privilege—or within any other generally applicable discovery privilege. *See, e.g., Fossil Grp. v. Angel Seller L.L.C.*, No. 20-CV-2441 (WFK) (TAM), 2021 U.S. Dist. LEXIS 218446, at *8 (E.D.N.Y. Oct. 22, 2021) ("it is well settled that settlement agreements and negotiations are not protected from disclosure as privileged"); *see also Valiante v. VCA Animal*

*Hosps., Inc.*, CIV. NO. 3:09CV2115(WWE), 2011 U.S. Dist. LEXIS 5096, 2011 WL 219672, at *4

(D. Conn. Jan. 20, 2011) ("While Rule 408 of the Federal Rules of Evidence limits the

introduction at trial of evidence regarding settlement negotiations, it only applies to the

admissibility of evidence at trial, not to discovery") (internal citations omitted). "The simple fact

that the parties to the settlement agreement agreed to its confidentiality does not shield it from

discovery." *Conopco v. Wein*, No. 05 Civ. 9899 (RCC) (THK), 2007 U.S. Dist. LEXIS 27339,

2007 WL 1040676, at *14 (S.D.N.Y. Apr. 3, 2007); *see also Oppenheimer v. Episcopal*

*Communicators, Inc.*, CIVIL CASE NO. 1:19-cv-00282-MR, 2020 U.S. Dist. LEXIS 146398

(W.D.N.C. Aug. 14, 2020).

In short, these settlements are not protected by a commercial privilege under Exemption

6.1.5.

### C. Although not raised by WMATA, Exemption 6.1.6, would not shield these settlement documents as a clearly unwarranted invasion of personal privacy.

WMATA may argue that the withholdings were allowable under Exemption 6.1.6. PARP

Exemption 6.1.6, like FOIA Exemption 6, permits the exclusion from production of "personnel

and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." See PARP § 6.1.6; 5 U.S.C. § 552(b)(5). This exemption has been

held to protect "bits of personal information, such as names and addresses," along with files,

when the release of that information "would 'create[] a palpable threat to privacy.'" *Jud. Watch,*

*Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830

F.2d 388, 391 (D.C. Cir. 1987)). The key purpose of this exemption is "to protect individuals

from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).

Evaluation of a purported privacy withholding involves a "balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *U.S. Dep't of Def. Dep't of Mil. Affairs v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992) (citations omitted).

Ultimately, "courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders*, 309 F.3d at 32, and exemptions are to be "narrowly construed," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Indeed, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders*, 309 F.3d at 32 (quoting *Wash. Post Co. v. U.S. Dep't of Health & Human Servs., 69*0 F.2d 252, 261 (D.C. Cir. 1982)).  This is because, at the heart of this analysis is "the citizens' right to be informed about 'what their government is up to.'" *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773, 109 (1989)).

Here, the interest at stake is the public's right to know how WMATA spends tax-payer money. *Jenkins v. Wash. Metro. Area Transit Auth.* (*In re Fort Totten Metrorail Cases Arising out of the Events of June 22*), 960 F. Supp. 2d 2, 7 (D.D.C. 2013) ("And the fact that some of the sealed records reveal how WMATA utilized taxpayer funds in settling lawsuits further strengthens the public's stake in their release.").

The D.C. Circuit Court has already analyzed a similar request made by this same plaintiff in *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). In that litigation, HRDC (then called Prison Legal News), used FOIA to request complaints and settlement from the *Prison Legal News v. Samuels*, 415 U.S. App. D.C. 354, 357, 787 F.3d 1142, 1145 (D.C. Cir. 2015). In that litigation, the government released the settlement amounts, but redacted  the names of people involved. *Id.* In that case, the court instructed that withholdings must not be based on categorical arguments, but individually tailored analysis of each redaction. *Prison Legal News*, 787 F.3d at 1151. *See also Pinson v. DOJ*, 236 F. Supp. 3d 338 (D.D.C. 2017); *cf. Parker v. EEOC*, 534 F.2d 977 (D.C. Cir. 1976) (withholding of settlements allowed under Exemption 3, protected by a separate law).

While the withholding of settlement amounts may be an issue of first impression in this court, several state jurisdictions, analyzing state FOIAs, have concluded that such information must be released, regardless of promises made in the settlements themselves. *Anchorage Sch. Dist. v. Anchorage Daily News*, 779 P.2d 1191 (Alaska 1989) ("a confidentiality provision such as the one in the case at bar is unenforceable because it violates the public records disclosure statutes"); *Guy Gannett Pub. Co. v. Univ. of Me.*, 555 A.2d 470 (Me. 1989) (settlement ordered disclosed with only one sentence regarding medical condition permitted to be withheld); *Det. Free Press Inc. v. City of Det.*, 480 Mich. 1079, 1079 (2008) ("there is no FOIA exemption for settlement agreements"); *Bradley v. Saranac Bd. of Educ.*, 455 Mich. 285, 303, 565 N.W.2d 650 (1997) (MI 1997) ("No exemption provides for a public body to bargain away the requirements of the FOIA."); *State ex rel. Findlay Publ'g Co. v. Hancock Cnty. Bd. of Comm'rs*, 684 N.E.2d 1222, 1224 (Ohio 1997) (per curiam) ("In general, a settlement agreement of a lawsuit in which a public

office is a party is a public record subject to disclosure … a public entity cannot enter into enforceable promises of confidentiality regarding public records"); *Tribune-Review Publ'g Co. v. Westmoreland Cnty. Hous. Auth.*, 833 A.2d 112, 117 (Pa. 2003); *Yakima Newspapers v. Yakima*, 890 P.2d 544, 547 (Wash. Ct. App. 1995); *Daily Gazette Co. v. Withrow*, 350 S.E.2d 738, 746 (W. Va. 1986) ("Assurances of confidentiality do not justify withholding public information from the public").

## VI.    Conclusion

Neither of the claimed exemptions—Exemption 6.1.4 or Exemption 6.1.5—shield the settlement amounts from disclosure under PARP. Likewise, should the Court reach it, Exemption 6.1.6 cannot support WMATA's failure release the records. Thus, with no exemption on which WMATA can base its failure to disclose these settlement documents, this Court should order them produced.

Dated: November 7, 2022

Respectfully submitted,

*/s/ Deborah M. Golden*
Deborah M. Golden
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com
Counsel for Plaintiff Human Rights Defense Center