## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,

        *Plaintiff*,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

        *Defendant*.

Civil Action No. 1:19-cv-02114 (CJN)

## MEMORANDUM OPINION

Plaintiff Human Rights Defense Center (HRDC) claims that Washington Metropolitan Area Transit Authority (WMATA) has failed to comply with WMATA's Public Access to Records Policy ("PARP") and must disclose certain settlement agreements WMATA has reached.  *See generally* Compl., ECF No. 1.  Both parties have moved for summary judgment.  *See* Pl.'s Mot. for Summ. J., ECF No. 32; Def.'s Mot. for Summ. J., ECF No. 33.  For the following reasons, the Court grants HRDC's motion for summary judgment and denies WMATA's.

### I.    Background

HRDC is "dedicated to public education, prisoner education, advocacy, and outreach to support the rights of prisoners and to further basic human rights."  Pl.'s Mem. in Supp. of Mot. for Summ. J., at 2, ECF No. 32-1 ("Pl.'s Mem.").  To that end, "HRDC gathers information from governmental entities around the country and publishes the information in its journals and on its websites."  *Id.* at 3.

In February 2019, HRDC requested certain settlement agreements from WMATA.  Pl.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 32-2.  WMATA operates a police force—

the Metro Transit Police Department.   HRDC sought a copy of "the verdict, settlement[,] or judgment" as well as a copy of the "underlying claims" in each case in which WMATA or insurers paid $1,000 or more to resolve a claim involving that Department.   Def.'s Statement of Undisputed Material Facts ¶ 1, ECF 33-3.   WMATA eventually produced some documents and withheld others.   *Id.* at ¶¶ 4-7.   In particular, WMATA refuses to hand over 17 settlement agreements without redacting the monetary amounts of the settlements.   Def.'s Mem. in Supp. Of Mot. for Summ. J. and in Opp. To Pl.'s Mot. for Summ. J., 3, ECF 33 ("Def.'s Mem.").   HRDC insists that the monetary amounts be disclosed.   Pl.'s Mem. at 4.   At an impasse, both parties moved for summary judgment.

## II.   Legal Standards

PARP makes certain WMATA records available for public inspection "to the greatest extent possible unless exempted from disclosure by a provision" within the policy.   PARP § 1.0. WMATA may redact or withhold information that falls within one of nine enumerated exemptions. *See* PARP § 6.1.   PARP and its exemptions are "interpret[ed] and appl[ied] consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal practice."   PARP § 1.0; Def.'s Reply in Supp. of Mot. for Summ. J., 5, ECF 37 ("Def.'s Reply"); Pl.'s Mem. at 1.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.  Analysis[1]

WMATA invokes only one PARP exemption to justify withholding the monetary amounts of some of its settlements:  Section 6.1.5.  Modeled after FOIA Exemption 5, PARP's section 6.1.5 exempts "intra-agency and inter-agency . . . memoranda or letters which would not be made available by law to a party in litigation with WMATA."  *See Unsuck DC Metro v. WMATA*, No. 19-cv-1242, 2020 WL 2571628 at *8 (D.D.C. May 21, 2020).  In particular, when it comes to requests for intra- and inter-agency communications, the exemption allows WMATA to assert "the privileges that the Government may claim when litigating against a private party."  *See Abtew v. DHS*, 808 F.3d 895, 898 (D.C. Cir. 2015).  According to WMATA, the exemption applies in this case because (in its view) "[c]onfidential settlement agreements are regularly afforded protection in civil discovery."  Def.'s Mem. at 12.

Unfortunately for WMATA, its argument misses a crucial step:  "It ignores the first condition of [the exemption], that the communication be 'intra-agency or inter-agency.'"  *Dep't of*

---

[1] The Court "assume[s] without decid[ing]" that a cause of action for HRDC's PARP claim exists.  *See Burks v. Lasker*, 441 U.S. 471, 476 (1979); *D.C. Ass'n of Chartered Pub. Sch. v. D.C.*, 930 F.3d 487, 490-91 (D.C. Cir. 2019).  Neither party contests the existence of a cause of action. And as the Court of Appeals has recognized, whether a plaintiff has a cause of action for a claim against WMATA is not a jurisdictional question.  *See Elcon Enters., Inc. v. WMATA*, 977 F.2d 1472, 1479 n.2 (D.C. Cir. 1992).  After all, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction."  *D.C. Ass'n of Chartered Pub. Sch.*, 930 F.3d at 491 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

The Court does not perceive any other jurisdictional defect.  The Court has subject-matter jurisdiction under the WMATA Compact, which grants original jurisdiction to the United States District Courts for "all actions brought by or against the Authority."  Pub. L. No. 89-774, 80 Stat. 1324, 1350 (1966).  WMATA has not raised any sovereign immunity defense.  And as the Supreme Court has explained, a court need not "raise the [immunity defense] on its own.  Unless the [entity] raises the matter, a court can ignore it."  *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998); *see Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 515, n. 19 (1982); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014) (collecting cases).

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001).  WMATA claims the exemption is not limited to internal communications.  Def.'s Mem. at 4.  But there is "no textual justification for" that position, which would "drain[] the first condition of independent vitality."  *See Klamath*, 532 U.S. at 12.  That "first condition . . . is no less important than the second; the communication must be inter-agency or intra-agency."  *Klamath*, 532 U.S. at 9 (quotation marks omitted).   As a result, WMATA cannot claim section 6.1.5's exemption if the settlement agreements and amounts HRDC seeks were shared with third parties.

They were.  As WMATA acknowledges, "each settling party has access to their settlement amount."  Def.'s Reply in Supp. of Mot. for Summ. J., 3, ECF 37 ("Def.'s Reply").  Each settlement agreement and amount is, in other words, communicated with a party external to the agency—indeed, with a party adverse to WMATA.  Not only that, both sides of the settlement agreement play a role in creating the agreement, meaning that the agreements and amounts were not even wholly internally generated.  Each of the settlement agreements, including the settlement amounts, are thus beyond section 6.1.5's scope because they are not inter- or intra-agency communications.

WMATA counters that that even if the settlement amount in each individual agreement were disclosable, taken as a whole, they are shielded.  Def.'s Reply at 3-4.  This is so, WMATA says, because the dollar amounts in the settlement agreements are the product of an internal valuation methodology.  *Id.*  WMATA's fear is that by looking at all of the settlement amounts, one might be able to reverse engineer that internal valuation methodology.  *Id.* And according to WMATA, that *methodology* "satisfies the intra-agency or inter-agency requirement."  *Id.* at 3.[2]

---

[2] WMATA does not make any other argument as to why the intra- or inter-agency requirement might be met here.

But HRDC is seeking settlement agreements, not methodologies.  And the fact that some reverse engineering could be possible does not transform the externally shared settlement agreements into intra- or inter-agency communications.  What matters is with whom the agreement was shared. Nobody would consider a Delta airlines receipt sent to a customer to be an internal communication, regardless of the fact that Delta used internal processes to set the price reflected on the receipt and regardless of the fact that by looking at enough receipts, one could surmise that Delta's internal algorithm generally prices January flights to Sweden cheaper than July ones.  The same is true here.

In sum, because HRDC requests externally communicated information, WMATA's only argument for denying those requests fails.

## IV.  Conclusion

For these reasons, HRDC's Motion for Summary Judgment is **GRANTED**, and WMATA's Motion for Summary Judgment is **DENIED**.  An order will issue contemporaneously with this opinion.

DATE:  September 27, 2023

CARL J. NICHOLS
United States District Judge